# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Bruce Murray | : | CIVIL ACTION |
| Petitioner | : | No. 98-5866 |
| v. | : | |
| John E. Wetzel, Secretary, | : | |
| D.O.C. ; M. Overmyer Supt. | : | |
| S.C.I. Forest; Donald Vaughn, et al; | : | |
| S.C.I. Graterford | : | |
| Respondents. | : | |

FILED

JAN 23 2018

KATE BARKMAN, Clerk
By_____Dep. Clerk

JAN 2 3 2018

---------------------------------------------------------------------------------------------------------------

### Petitioner's Memorandum In Support Of Motion

### Pursuant to FRCP 60(b)(1),(2),(3)(4)(6)

### From Relief From Judgement/Order

---

Petitioner, Bruce Murray, is Pennsylvania prisoner, sentence to Life. Mr. Murray, pro se, respectfully asks the Court under Rule 60(b) of the Federal Rules Of Civil Procedure (FRCP), To reopen this habeas corpus case.

## PRELIMINARY STATEMENT REGARDING CITATIONS

All emphaiss herein is supplied, unless otherwise indicated.

Transcripts of preceedings in Pennsylvania courts are referred to as "Notes of Testimony" as "N.T." followed by the date and page number.

## STANDARD OF REVIEW

Petitioner respectfully request that this Court reopen his federal habeas corpus petition under the "fundamental miscarriage of justice," exception were as here, the Petitioner can make a credible showing of actual innocence.

The United States Supreme Court's recent decision in McQuiggin v. Perkins, 133 S.Ct. 1924 (2013), extended the doctrine to allow petitioners who has claims of actual innocence to overcome the (AEDPA) one-year statute of limitations.

Recently, the Third Circuit Court of Appeals, In Satterfiled v. District Attorney Philadelphia, 2017 U.S. LEXIS 18537 (3d Cir. 2017), held that a "Rule 60(b)(6) relief motion can be used to reopen habeas petition when a petitioner presents a credible claim of actual innocence."

The Supreme Court's most recent decision in Buck v. Davis, 137 S.Ct. 759, 778 (2017), established that a severity of the underlying constitutional violation is an equitable factor that may support a finding of extraordinary circumstances under Rule 60(b)(6).

Additionally, Petitioner's actual innocence claim under McQuiggin, also makes relevant his colorable claims of ineffective assistance of trial, appellant, and PCHA counsels.

Here, all prior counsels failed to investigate, and rise an alibi defense and present exculpatory evidence, and evidence of Petitioner's actual innocence in the state court corrective process. Thus causing a constitutional deficient performance under Strickland v. Washington, 104 S.Ct. 2052 (1984).

Subsequently, in Martinze v. Ryan, 132 S.Ct. 1309 (2012), the Supreme Court held that where claims of trial counsel's ineffectiveness could only be brought in state post conviction proceedings, [which this Court never addressed], Petitioner can overcome any procedural default of such claims by showing that state post conviction counsel was ineffective for failing to raise the claim. Thus a claim of ineffectiveness will not be deemed waived where the petitioner has layered the claim by alleging the ineffectiveness of all prior counsel for failing to rise the claim. Commonwealth v. Allen, 732 A.2d 582, 587 (Pa. 1999).

Because of the failure to present any evidence of trial counsel's ineffectiveness, fatal to Petitioner's habeas rights, was directly attributable to the ineffectiveness of PCHA counsel pursuant to McQuiggin, Safferfield, and Martinez, supra,

Preventing a petitioner who can make a credible showing of actual innocence from utilizing the fundamental–miscarriage-of-justice exception for consideration of Rule 60(b)(6) relief, would cause an injustice to Petitioner, and risk undermining the public's confidence in the judicial process. Buck v. Davis, 137 S.Ct. 759, 778 (2017).

Petitioner's judgment should be reopened under Rule 60(b)(6), considering the extraordinary circumstances presented in this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Petitioner, was tried, before a Judge that didn't have authority to hear the proceeding, Pursuant to 42 Pa. C.S. sec. 3151 contrary to Statutory Law and the Constitutional Law, the law is clear for a Judge to sit and perform duties he/she must take the prescribe Oath of Office required and any act is a legal nullity without it...Judge Savitt did not take this prescribe Oath Of Office.

Petitioner, who has claimed his Innocence from the start of his arrest of false imprisionment, was virtully Abandoned by Trial Counsel who blithely aceeded that petitoner was guilty. See: Interrogatorries addressed to prior counsel page 4- of- 4 at 9(c) Attorney Cohen answer "I thought defendant reasonably lucky not to get death penalty. Prior to this statement plaintiff filed Motion for withdraw of counsel, a hearing was held by Judge Savitt who acted without Authority to do so, He Denied Motion.

I was found guilty, and trial Counsel Appeal to Superior Court who Denied Notice Of Appeal., Trial Counsel was Ineffective for filing 4 days late to Pennsylvania Supreme Court, this Court Denied without Prejudice.

Petitioner filed a timely PCHA petition and was assigned a post conviction counsel who corrected errors, by Amended petition of trial counsel ineffectiveness, but PCHA Counsel died in the mess of these proceedings and later the court assigned new PCHA counsel who literally did nothing for petitioner.

As a result, no investigations was done, nothing progress after the death of Irene Cotten. Although petitioner has a State Right to effective assistance of PCHA Counsel, when current counsel proffered evidence that petitioner was tried in violation of his Constitutional Right to a fair trial, and effective assitance of counsel, and a right to face his accusers, and to be put on Notice of the charges he must defend against.

Trial Counsel was ineffective, for not securing these Rights. These vioation occured for said judge had not the authority to perform any duties for his lack of Oath.1.

During the pendency of petitioner Murray's first, timely petition pursuant to the Pennsylvania Post Conviction Hearing Act (PCHA) Mr. Murray has been incarcerated and indigent for over 30 years repeatedly fighting to prove his Actual Innocence and Illegal Detention, an Evidentary Hearing was held before judge Papalini who resieded over the New Supporting Evidence, but at the end of this matter it was transferred to trial Judge serval years latter and was Denied on a cold record by Savitt J. the Superior Court followed suit in part and reversed in part, and the Pennsylvania Supreme Court Denied Allocator.

# STATEMENT OF FACTS AND OF THE CASE

## A. State Court Proceedings.

On Saturday, 9/11/82 at approximately 3:05 inside 1817 Wharton St. Det. Girard #9189, Homicide Unit did arrest Bruce Murray 22 for Murder§ 2502, Robbery 3701 F-1, burglary 3502 F-1, conspiracy 903 F-1, PIC M-1, POW M-1. At the time of arrest the defendant was searched and confiscate Narcotices (34) pills.<'•> On 11/30/82, Petitioner was arraigned and the case was set for trial in June, 1983. On 11/04/1982, a preliminary hearing was held and petitioner was held for court. Pamela Cohen was appointed and appeared as counsel; and for reason's of her performance, petitioner filed for withdrawal of counsel Motion, a colloquy hearing was held and denied which would have refuted Murray's whereabouts on the evening of December 16, 1980 and that appellant, was not with Wesson, Holden or Douglas Haughton at Gregory Holden's house and planned the robbery of Eric Delegal. Haughton claim Murray was armed with a .32 caliber pistol and Wesson with a sawed off shotgun. The four then walked to Delegals home where Holden and Haughton remained outside. The petitioner and Wesson entered Delegal's house and a few minutes later Holden heard the sound of a shotgun blast and five pistol shots.<²•> Douglas Haughton, and Tyrone Wesson admitted to the crimes, and both say they were coerce into mentioning others into the crime. A suppression hearing was held and denied. The Trial Judge David Savitt, proceeded with the Death-qualification of the jury, Witherspoon that such juries are not representative and do not provide impartial tribunals, and deliberate exclusion of blacks from the trial; inviolation of Swaine/Batson 5/19/83 N.T. 224, 283-92; 5/25/83 N.T. 437-49; 5/26/83 N.T. 591, around 800 to 812; and found petitioner guilty of 2nd degree murder.<³•> Petitioner, did instruct counsel to challenge the sufficiency of the evidence on her appeal to Superior Court!

---

1• Judge Avellino, Bernard found Mr. Murray Not Guilty for 35§ 780-113 §§A16, and Nolle Prossed §§A30 for the drugs planted on Petitioner by Det. Gerrard; and Gilbert  See: Com. v. Atwell. Sup. Ct. No.1661 EDA 2008.

²•Superior Court No. 01505 Pa. 1984 Memorandum. Where it is noted in the preliminary hearing that it is Mr. Haughton who claim to heard these shots along with Other Inconstencies in Haughton's testimony the vere brought to the jury's attention concerned such important details of the number of shots he heard, or other persons present in Delegals house etc.(N.T.6/1/83 pg.'s 254 -391; 6/2/83, p.469-499, 511, 576.

³•Judge Savitt, who didn't have oath of office at time of trial, let the Asst. D.A. use of peremptory strikes against black venirepersons under Swain v. Alabama, which is extraordinary circumstance that can should have been viewed as governmental interference with petitioner's right to due process.

The trial court immediately proceeded to a sentencing hearing; however immediately after trial. Both Haughton and Wesson acknowledged that they were the only participants in the robbery and /or shooting death of Eric Delegal; Haughton by way of affidavit dated April 11, 1985 notified Murray's trial counsel (N.T. 7/25/91, 15-18-19), and Wesson, he told the court at the time of sentencing that he had wanted to testify at trial and that neither Holden nor Murray had any involvement with the crime, Judge David Savitt told him that the sentencing proceeding was not the proper forum in which to address this issues (N.T. 4/23/84, p.15; 7/25/91, p.46).

On appeal to the Pennsylvania Superior Court, Petitioner was represented by trial counsel. The Superior Court refusal to Remand the matter to the trial court for proceedings concerning the recantaton of the sole eyewitness' [Haughton]; nor did the Superior Court recognize the withdrawal of Counsel Motion file by petitioner. That Court affirmed the judgment of sentence Doc. at No. 01505 Phila. 1984, Nov. 1, 1985.

On Dec. 5, 1985; appeal to the Pennsylvania Supreme Court, Petitioner was prejudiced" by counsel's failure to file the petition for Allowance of Appeal on time: a) It denied him the possibility of having the court consider his petition on its merits and thus denied him the possibility to have that court take his appeal. The Pennsylvania Supreme Court on Nov. 26, 1986 denied petition without prejudice to appellant's right to seek an appeal.<'•>

On Dec. 1986, Petitioner filed a pro se PCHA petition. The state court appointed counsel. On March, 1988 appointed counsel Amended.²• On Dec. 12, 1988, all but five of appellant's allegations were dismissed. An evidentiary hearing on the remaining issues was Woven into Murray's claim of ineffectiveness was held on July 25, 1991, Douglas Haughton and Tyrone Wesson testified on Mr. Murray's behalf. Among other things, Haughton testified that his trial testimony was false, that he had testified against Murray in order to obtain a lighter sentence, (N.T. 7/25/91, p.15, 19). Haughtons testimony was corroborated by Eugene Thomas, who testified at the P.C.H.A. HEARING that he was a former cellmate of Haughton, and Haughton had confide to him that he had lies and Murray is innocent (N.T. 7/25/91 p.4-6).

---

'• <u>Rose v. Lundy</u>, Dismissal without Prejudice- Bears Reexamination!
²•See: Irene Cotton Esq. Specific Pleading Pursuant to Order of May 12 1988 P.C.H.A. First opportunity Where the <u>Batson v. Kentucky</u> claim was woven into claim of ineffectiveness, and was raised and addressed by the court.

As to Wesson, he told the court neither Murray or Holden had any involvement with the crime (N.T. 4/23/84, p. 15; 7/25/91, p.46). Indeed, Wesson at all times had denied having made the statement attributed to him, he contended at his own suppression hearing and at the PCHA hearing that the statement purportedly made by him was not in fact his statement (N.T. 7/25/91 p. 65-67. Following the death of appellant's first PCHA counsel, arguments was heard before Judge Papalini, new counsel was appointed<'•>. The case when under advisement, and transferred to David Savitt on March 2, 1995, several years latter. The statement Judge Savitt, made on the record is misleading and mischaracterizing the fact that he heard arguments on Sept. 21, 1995 which is false on it's face, "For petitioner was not present for this false hearing"; Where is the Record?.. PCHA RELIEF WAS DENIED ON Nov. 30, 1996 by Judge Savitt on a cold record. Appellant presents the following five issues for our The Superior Courts review: No. 04273 Phila. 1995:

(1) Whether trial counsel was ineffective for failing to raise on direct appeal the prosecutor's use of racially discriminatory peremptory challenges; (2) Whether After-Discovered evidence entitles him to a New Trial; (3) Whether he was unfairly prejudiced at trial by a redacted statement of a codefendant; and (4) Whether the trial court illegally sentenced him on the counts of criminal conspiracy and possessing an instrument of crime; (5) Medical Examiner change autopsy at request of District Attorney office which prejudice's defendant.

Accordingly, the Superior Court addressed the meirts of the Batson, claim, That Court Order reversed in part and affirmed in part.<2>

On Nov. 10, 1997, The Supreme Court denied appellant's petition for Allowance of Appeal, See: Note: page vi at 1. Purs. to Lundy id.

Murray filed a pro se federal habeas petition on Nov. 5, 1998 raising (a) first appellate counsel was ineffective in failing to file a timely appeal to The Supreme Court, (b) Counsel was ineffective for failing to raise on direct appeal the issue of the prosecutor use of peremptory challenges in a racially discriminatory fashion in violation of Batson v. Kentucky, 476 U.S. 79 (1986), (c) Petitioner's sixth Amendment right's were violated by the use of a codefendant's redacted confession which alluded to and clearly identifies petitioner; and (d) after-discovered exculpatory evidence was not considered despite its relevance to petitioner's Actual Innocence.

'• Still neither Thomas McGill, Esq., Bernard Siegel Esq.
raised the inaction or action of trial counsels ineffectiveness
for not raising failure to call alibi defense witness, corrupt
Cop's nor The Sufficiency of Evidence.

<² • This is the Second stage of the developement of Batson v.
Kentucky being address by the Superior Court: No.04273 Phila.
1995 filed Nov. 13, 1996 page 3.

Respondents filed a response on April 2, 1999. On Sept. 9, 1999, the magistrate judge issued a Report and Recommendation Recommending that an evidentiary hearing be held on Murray's claim under Batson v. Kentucky, 479 U.S. 79 (1986). Respondents filed objections to this R&R and Murray filed a pro se response to the objection. On Dec. 8, 1999, Judge Anita B. Brody issued an order declining to adopt the R&R on the grounds Murray failed to exhaust a Batson claim in the state court system and that he did not actually allege a Batson claim in his federal habeas petition. I remanded the habeas petition back to magistrate judge for a second R&R considering Murray's ineffective assistance of counsel claim. On Jan. 31, 2000, the magistrate judge issues a second R&R denying Murray's habeas petition "failed to develop" Id. Batson, issue during the proceedings on the first PCHA petition and recommending that a Certificate Of Appealability not be granted. Petitioner's retained counsel did not object or file anything, said Natili Esq. Abandon his client.<'•>

On Oct. 5, 2004 Murray filed a Motion to Relieve Judgment under Rule 60(b)(6). On May 17th 2005 Petitioner's Motion to Relieve Judgment Under Rule 60(b)(6) is DENIED. Petitioner, filed with the United States Court Of Appeals For the Third Circuit C.A.No. 05-2899 On April 6 2006 said Court Denied Rule 60(b) Motion.

On Feb. 3, 2006 petitioner, filed pro se second post conviction relief. Trial Court appointed counsel, on Feb. 5, 2008 counsel sought to withdraw and submitted a "no-merit" letter and on May 13, 2008, entered an order that granted counsel's petition to withdraw and dismissed appellant's second petition as untimely.<²•>

Petitioner, filed a second petition for habeas corpus relief, On Nov. 9, 2009 said petition was DISMISED WITHOUT PREJUDICE Nov. 17, 2009; And on Jan. 9, 2015 petitioner filed Rule 60(b) pursuant to Martinez and Mc Quiggin and Cox, Anita B. Brody,J. Memorandum dated June 24, 2015 denied as untimely. The Third Circuit denied petitioner's request to file a 2nd or successive petition on Sept. 22, 2015. The instant petition is an unauthorized successive petition.

Plaintiff, may not file such a petition without first obtaining approval from the Third Circuit, and march 3rd 2017 the petiton is DIMISSED WITHOUT PREJUDICE.

---

1. Plaintiff, filed paperwork to Judge Anita Brody concerning Natli not persueing an appeal or Objection in Court or bring to the court's Attention Evidence he recived that prove innocence. Judge Brody responded back saying the Lawyer is investigating...According to U.S. v. Haas, 623 F.3d 1214 (8th Cir. 2010) Attorney who undertake to represent a client assumes obligation towards his client which are not excused merely because the client is unable to pay fee demanded by the Attorney. To proceed pro se as here, presents the very real possiblity that the commonwealth will prevail for the sole reason that its opponet did not understand the facts in issues or how to defend against the allegations raised. In re Bulen, 375 B.R. 858 (2007). Note: That Natalli Esq. never withdrew but his abandonment/Nonaction affected framwork of defendants claim and prejudice is unavoidable.

2. Nontheless, since the timeliness of this petition is a threshold question, the Superior court No. 1661 EDA 2008 proceed to consider appellant's contentions that he is entitled to relief based upon the following issues (1). Bruce Sagel/Jack Mahan and Barbara Christain and Robert Marano, who all colluded in Racially Discriminatory jury selection which came out by Lynn Abraham in the D.A. Office and (2). the improper police tactics(favors for testimony ) History of illegal tactics of arrest See **Exhibit A, Detective Gerrard coerce Haughton to make statement againt Murray, See: Exhibit B, Det. Gerrard and A.D.A. Marano showed photos to the sole eyewitness Mr. Strickland to try and get him to testify against Mr. Murray See: Exhibits C Details of Complaint Det. Gerrard falsified report, claiming to have search Mr. Murray at 3:05 at time of arrest and confiscated drugs, than taken to Homicide Unit, See ExhibitC1 in Room 117 time 3:30 frisked found drugs and at 3;50 drugs was claim to have been found again by Det Gerrard. See: Exhibit C2 Murray was found guilty for these false charges, and a New Trial was Granted See: Exhibit C3, These same Detectives were framing other people to win conviction See Article by Kurt Heine Daily News Staff Sex, Lies and Frame Ups by police and just reasonly Dec. 31, 2017 claims of false hood from within City Police Department See: Exhibit C4.**

## ARGUMENT

THIS MOTION IS PROPERLY BROUGHT UNDER 60(6)(B) MOTION DOES NOT CONSTITUTE A SUCCESSIVE PETITION.

The United States Court have jurisdiction and Authority to re-open a case under Habeas Corpus 28 U.S.C. sec. 2254 and grant relief purs. to a 60(b) motion where the state misrepresents facts in Federal Court pleadings, which effected District Court decision: See: Gonzsles v. Crosby, 125 S.Ct. 2641 (2005). The court concluded "[A] rule 60(b) motion in a 2254 case is not to be treated as a successive habeas petition if it does not assert, or reassert, claims of error in the movant's state conviction" Gonzales, 545 U.S. at 538.

Rather, rule 60(b) is the proper vehicle where the "motion attacks not the substance of the Federal Court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," Id. at 532 in Gonzales, because the motion "confine[d] itself...to a nonmerits aspect of the first federal habeas proceeding...[n]othing in [Supreme Court precedent] suggests that entertaining such a filing is inconsistent with AEDPA". Id at 534.

There are examples of rulings that could be challenged by a Rule 60(b)(6) motion in cluding rulings denyings relief" for such reasons as failure to exhaust, procedural default, or statute of limitation bar." Gonzales, 545 U.S. at 532 n.4. SeeL e.g. United States v. Andrew, 463 F.App'x at 172 (3rd Cir. 2012), Thompson v. Bell, 580 F.ed 423, 442-44 (6th Cir. 2009), Ruiz v. Quarterman, 504 F.3d 523, 526 (5th Cir. 2007).

In Satterfield v. Dist. Attorney Phila; 2017 BL 339627, 3d. Cir. No. 15-2190. 9/26/17 The United State Court of Appeal for the Third Circuit held a convicted murderer will have the opportunity to prove his "Actual Innocence. The court applied the U.S. Supreme Courts 2013 decision in Mcquiggin v. Perkins and a federal procedural rule 60(b)(6), that Actual Innocence, if proved, can overcome procedural hurdles. McQuiggin and the facts around it being the Judge without an Oath Of Office qualifies as the "extraordinary circumstance" allowing for this relief.

This credible claim of Actual Innocence/Miscarriage of Justice and Fraud upon the Court falls within an excption to the AEDPA'S one year statute of limitation. Lopez v. Trani, 628 F.3d 1228, 1230 (10th Cir. 2010). The Third Cir. reversed in Satterfield, holding that McQuiggin was the kind of extraordinary case that support a Rule 60(b) motion, which this decision is consistent with Rivas v. Fischer, 687 F.3d 514, 549 (2d Cir. 2012) which granted habeas base on the Supreme Court's observation that "concern about the injustice that results from the conviction of an innocent person has long been at the core of our cirminal justice system," reflecting" a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." Schlup v. Delo, 513 U.s. at 325 (1995)

The instant motion is the type that McQuggin and Satterfield, held to be properly

8                                    1

brought under Rule 60(b) (1),(2),(3),(4) and (6). It challenges, evidence of Actual Innocence caused Govermental Interference, that must be made with in a reasonable time, in some cases and in others can be rasied at anytime, Hazel-Atlas Glass Co. v. Harford Empire Co. 1944, 64 S.Ct. 997, 322 U.s. 238, 88 L.ed 1250; in which this court what constitutes a reasonble time depends on the circumstances of each case. citing Delzona Corp. v. Sacks, 265 F.2d 157, 159 (3rd Cir. 1959)(Murray v. Vaughn, Doc.49 Filed 2015 page 2. This Court In Cox, The Third Cir. made clear that "one of the critical factors in the equitable and case-dependent nature of the 60(b)(6) analysis... is whether the 60(b)(6) motion under review was brought within a reasonable time of the Martinez decision.

Anita B. Brody, J. denied petitioner's 60(b) motion as untimely, for his 60(b) motion was not raised 90 days after the Martinez decision, but this court reconized the panel did not provide a specific time frame that it deemed reasonable:

It has been held that relief from a judgment obtained by extrinsic fraud could be secured by motion within a "reasonable time" which might be after the time stated in the rule had run. Fiske v. Buder, C.C.A. 8th, 1942, 125 F.2d 841; See: also inferentially, Bucy v. Nevada Construction, Co. C.C.A. 9th, 1942, 125 F.2d 213.

There is no time limit or laches applies to relief based on Fraud upon the Court because Fraud on the Courts concern the integrity of the judicial process itself, a judgment may be set aside for fraud on the court at any time. Gonzsles v. Crosby, citing Rodriquez supra and also Hazel-Atlas Glass Co. v. Hartford-Empire Co. supra, and the Third Cir. ruling of Root Refining co. v. Universal Oil Products, supra; and their recent ruling in Herring v. United States, 424 F.3d 384 (3d. Cir. 2005).

The Actaul Innocence evidence/fraud upon the court depends on whether petitioner was "diligent in developing the record and presenting, if possible, all claims of Constitutional Error.") Wilson v. Beard, 426 F.3d 653, 665 (3rd cir. 2005)(procedural default doctrine and sec 2254(e)(2)'s diligence requirement are analytically linked), Accordingly, this motion is cognizable under Rule 60(b)(1),(2),(3)(4) and (6), and the barriers to 'second or successivehabeas petitions do not apply.

II. RELIEF IS APPROPRIATE UNDER RULE 60(b)(1),(2),(3),(4) and (6).

A. Application of Rule 60(b)(6)

Rule 60(b)(6) states: "On motion and just terms, the Court may relieve a party...from a Final Judgment, Order or proceeding for...any...reason that justifies relief". Under Rule 60(b)(1 thou 6), this Court should vacate Order Dismissing Mr. Murray's habeas petition, and reinstate the habeas proceeding and address his proffers with regard to "trial competence and ineffective assistance, Actual Innocence and Fraud", which are significant and warrant

2   2

review under McQuiggin v. Perkin and Satterfield, which was raised before this court in prior 60(b)(6) motion June 24, 2015 Memorandum Doc. 49, 98-cv-05866.

Rule 60(b)(6) "confers Broad Discretion on the trial court to grant relief when approprate to accomplish justice, it constitutes a grand reservoir of equitable power to do justice in a particular case. McQuiggin, 133 S.Ct. at 1931. Underlying the Fundamental-Miscarriage-of-Justice exception is a "[s]en- sitivity to the injustice of incarcerating an innocent individual", as here See: Exhibit: A, and B, Affidavits and the doctrine aims "to balance the Societal Interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the EXTRAORDINARY CASE". Id. at 1932. for this reason,' [i]n appropriate cases,' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imprerative of correcting a fundamentally unjust incarceration."' Murray v. Carrier, 477 U.S. 478, 495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)(quoting Engle v. Isaac, 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).(alterationin the oiriginal). The Supreme Court has underscored the importance of these principles, explaining that: concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system. That concern is reflected, for example, in the fundamental value determination of our society that it is far worse to convict an innocent man that to let a guilty man go free; id. at 325 (quoting In re Winship, 397 U.S. 358, 372, 90 S.Ct. 1068, 25 L.Ed 2d 368 (1970)(Harlan, J; concurring).

The values encompassed by the Fundamental-Miscarriage-of-Justice exception and which drive the Supreme Court's decision in McQuiggin cannot be divorced from the Rule 60(b)(6) inquiry.

McQuiggin illustrates that where a petitioner makes an adequate showing of Actual Innocence, our interest in avoiding the wrongful conviction of an innocent person permits the petitioner to pursue his Constitutional claims in spite of the statute-of-limitation bar.

Such as here, almost immediately after trial, both Haughton and Wesson acknowledged that they were the only participants in the robbery and/ or shooting death of Eric DeLegal.

With regard to Haughton, he alerted Murray's trial counsel shortly after trial that he had lied at trial in order to obtain a lighter sentence. By way of affidavit dated April 11, 1985

Haughton notified Murray's trial counsel that his trial testimony was false and that neither Murray nor Holden was involved at all in the incident (N.T. 7/25/91, 18-19). Instead, as Haughton said in his affidavit, Wesson approached him on the street and asked him where he could buy some marijuana, that he and Wesson went to DeLegal's house to buy marijuana, a gun struggle ensued, and both Wesson and DeLegal were stuck by bullets. See Affidavit of Douglas Haughton, attached as Exhibit A.

At the PCRA hearing, Haughton testified that his trial testimony was false, that he had testified against Murray in order to obtain a lighter sentence, that the events as related in his affidavit were true, and that neither Holden nor Murray participated at all in the incident that culminated in DeLegal's death (N.T. 7/25/91, p. 15, 19).

Haughton's testimony was corroborated by Eugene Thomas, who testified at the PCRA hearing that he was a former cellmate of Haughton, and that Haughton had confided to him that he had lied at trial in order to obtain a lighter sentence for himself and was feeling guilty that his false testimony resulted in an innocent man--Bruce Murray--being convicted and sentenced to life imprisonment (N.T. 7/25/91, p. 4-6).

As to Wesson, he told the court at the time of sentencing that he had wanted to testify at trial and that neither Holden nor Murray had any involvement with the crime; however, the court told him that the sentencing proceeding was not the proper forum in which to address these issues (N.T. 4/23/84, p. 15; 7/25/91, p. 46). Indeed, Wesson at all times had denied having made the

statement attributed to him; he contended at his own suppression hearing and at the PCRA hearing that the statement purportedly made by him was not in fact his statement, that he had not read the document, and that he had signed the document without the advice of counsel despite his request for counsel (N.T. 7/25/91, p. 65-67).

At the PCRA hearing, Wesson testified that only he and Haughton were involved in the incident (N.T. 7/25/91, p. 47). More specifically, he testified that he had asked Haughton where he could obtain some marijuana and that Haughton led him to DeLegal's house. He further testified that his alleged statement was false and that neither Holden nor Murray were involved in any way, but that he could not state these facts at trial because his attorney had advised him not to testify so as not to jeopardize a possible appeal (N.T. 7/25/91, p. 39-46).

To grant post-conviction relief on the basis of after-discovered evidence under 42 Pa. C.S. §9543(a)(2)(vi), the court must be satisfied that the evidence "could not have been obtained at trial by reasonable diligence, that it is not cumulative or of such a nature that it merely impeaches credibility, and that it would be likely to compel a different result." Commonwealth v. Galloway, 433 Pa. Super. 222, 640 A.2d 454 (1994).

In this case, the exculpatory evidence could not have been obtained at trial by reasonable diligence. Neither Haughton's nor Wesson's testimony existed at the time of trial. Instead, the evidence was presented at the first opportunity available to Murray's counsel. With regard to the evidence pertaining to

Haughton, this case was on appeal to the Superior Court at the time trial/appellate counsel received Haughton's affidavit in April 1985. Counsel requested the Superior Court to remand the matter for a hearing on the new evidence, but the Superior Court denied her request. Post-conviction counsel raised this issue in the amended PCHA petition and presented this evidence at the first opportunity to do so, which was not until July 25, 1991, at the evidentiary hearing on the post-conviction petition.

Similarly, the evidence pertaining to Wesson was presented at the first opportunity available. Wesson did not testify at trial, upon the advice of counsel, and at his first opportunity to speak in court, which was at sentencing, the court advised him that it was not appropriate for him to present facts about the crime at that time. Thus, the first chance to present the exculpatory evidence was at the PCRA hearing on July 25, 1991.

The Superior Court in Commonwealth v. Bonaccurso, 425 Pa. Super. 479, 625 A.2d 1197 (1993), held that a witness' testimony was "unavailable" for purposes of determining whether after-discovered evidence warranted a new trial, where the witness left the murder scene and lied to police about whether he had seen any of the day's events.

Similarly, in this case, as of the time of trial the exculpatory testimony of neither Haughton nor Wesson existed. All that existed were Haughton's false statements to police and Wesson's purported statement to police. Wesson's exculpatory version of the events did not even become known by Murray's attorney until sentencing, and Haughton's exculpatory statements

did not become known until he sent counsel the affidavit in April 1985. The evidence was therefore unavailable.

In addition, the testimony is not merely cumulative nor merely impeaches credibility but, rather, is independent substantive evidence that entirely exculpates defendant Murray. Murray at all times has maintained his innocence and even presented alibi witnesses, and the after-discovered exculpatory evidence would certainly compel a different result at trial.

Although recanted testimony is ordinarily considered to be unreliable, Commonwealth v. Gaddy, 492 Pa. 494, 424 A.2d 1268 (1981), and although a convicted defendant is ordinarily not entitled to a retrial merely because a co-defendant later decides to testify on the defendant's behalf Commonwealth v. Sanabria, 487 Pa. 507, 410 A.2d 727 (1980), the situation presented in this case is different from the typical case involving recanted evidence or exculpatory testimony by a co-defendant.

Unlike the typical situation where recanted testimony, or exculpatory testimony by a co-defendant, comes forth for the first time many years after trial and at no risk to the person offering the new testimony, in this case the exculpatory testimony was offered almost immediately after trial. Haughton notified Murray's attorney as early as April 1985 that he had lied at trial, while Wesson attempted to exonerate Murray at the sentencing proceeding, just ten months after his conviction.

Furthermore, both Haughton and Wesson had nothing to gain but much to lose by coming forth when they did and saying that they were entirely responsible for the shooting death of DeLegal.

\

At the time that Haughton wrote to Murray's trial counsel in April 1985, he was still serving a five- to ten-year sentence in this case (N.T. 7/25/91, p. 14). He was not paroled until March 18, 1989, and at the time of the PCRA hearing he was incarcerated as a technical violator (N.T. 7/25/91, p. 15). The Commonwealth could have sought to vacate his sentence or to deny parole, on the basis that he breached his agreement with the Commonwealth.

Moreover, as acknowledged by the prosecution, his attempt to recant his testimony came within the statutory limitations period for perjury. (N.T. 7/25/91, p. 20).

In addition, Haughton's trial testimony was drastically called into question upon cross-examination. The defense attorneys pointed out innumerable instances in which Haughton had contradicted prior statements he had made. For example, whereas Haughton testified at trial that Murray was armed with a gun, Haughton previously testified that only Wesson had a gun (N.T. 6/1/83, p. 334-36). In fact, Haughton even contradicted his own prior testimony regarding his own possession of a gun on the date of the incident; whereas he previously testified that he had a gun on that date, he testified at trial that he had no gun at all on that date (N.T. 6/1/83, p. 390-91; 6/2/83, p. 445).

Other inconsistencies in Haughton's testimony that were brought to the jury's attention concerned such important details as where and when the plan was devised, the number of guns distributed, where the guns were obtained, who made the decisions about the plan, the number of shots he heard, other persons present in DeLegal's house, the quantity of narcotics Haughton

had consumed before the incident, where Haughton went after he heard the shots, and whether Haughton had ever heard the sound of a shotgun blast before (N.T. 6/1/83, p. 254-55, 269, 277-82, 284, 310, 340, 371-74, 390-91; 6/2/83, p. 469-70, 498-99, 511, 576). When pressed, Haughton repeatedly stated that his present recollection was better than his recollection at the time of the earlier preliminary hearings (see, e.g., N.T. 6/1/83, p. 281-82).

A review of Haughton's incredible trial testimony makes his subsequent recantation all the more plausible, particularly when combined with the corroborating testimony of Eugene Thomas.

Wesson, too, had nothing to gain by presenting testimony to exculpate Murray. Instead, by attempting to offer this testimony before he was sentenced, he was putting himself at risk, and the fact that he was willing to do so renders his testimony reliable.

Finally, it must be pointed out that the judge who heard the testimony of both Haughton and Wesson at the PCRA hearing was not the judge who rendered the decision denying the PCRA petition. Whereas questions of credibility with regard to recanted testimony are ordinarily matters for the PCRA court due to the fact that the PCRA court had the opportunity observe the demeanor of the witnesses, Commonwealth v. Gaddy, supra, this general rule does not apply in this case, where the judge who observed the witnesses was not the one who rendered the decision.

See: Judge Anita Brody's Memorandum June 24, 2015 Doc. 49 Case 2:98-cv-05866-AB in which plaintiff ask this bar placed upon him be lifted. This interest is so deeply embedded within our system of justice that we fail to see a set of circum-stances under which this change in law, paired with a petitioner's adequate showing of Actual Innocence, would not be sufficient to support Rule

60(b)(6) relief in this context. See: Exhibits: C. (Corrupt Cops in this case) who coerce false testimony to get conviction. See: Exhibits: A and B.

As in petitioners case, which held a contrary conclusion that closed the possibility, preventing petitioner who can make a credible showing of Actual Innocence and Fraud from utilizing the Fundamental-Miscarriage-of-Justice exception simply because the court had not yet accepted it's applicability at the time his petition was decided-an-outcome that would plainly betray the principles upon which the exception was built. ("Rule 60(b) is to be given a liberal construction so as to do Substential Justice and to prevent the judgment from becoming a vehicle of Injustice"(citation and quotations marks omitted); Johnson Waste, 611 F.2d at 600 (Rule 60(b)(6) allows "Court's to do Justice in hard cases"). Such as here where the Judge refuse to take OATH OF OFFICE at the time of Plaintiffs Trial. See: Exhibit: D. Where the Court ruled one elected or appointed to an office is admitted thereto, and discharges it duties without taking the prescribed Oath of giving the required bond, he is deemed an de facto office 42 Pa. C.S.§ 3151; Saraww v. Rodriquez, Feb. 2017 U.S. Dist. LEXIS 17068; and Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d (1969).

The Supreme Court's recent Decision in Buck v. Davis,---U.S.---, 137 S.Ct. 759, 778, 197 L.Ed2d (2017) established that the severity of the underlying Constitutional violation is an equitable factor that may support a finding of extraordinary circumstance under Rule 60(b)(6). The appellant in Buck, sought to vacate the court's judgment so he could present an otherwise defaulted claim of ineffective assistance of trial counsel. 137 S.Ct. at 777-79 See: McQuiggin, 133 S.Ct. at 1931; See also Schlup, 513 U.S. at 316-17, 115 S.Ct. 85' (noting that petitioners seeking habeas relief carry less of a burden when their convictions are the result of unfair proceedings-and the Actual Innocence threshold standard applies-then when they have been convicted after a fair trial). Because like Satterfield's and McQuiggin, Murray's claims of Constitutional Error, of the 6th Amend. the 14th Amend. and Equal Protection violation in conjunction with Art. 1, Sec. 9 of Pennsylvania Constitution; (Id. Exhibits), counsel's unreasonable failure to investigate and present exculpatory eyewitness testimony and call alibi defense witness and not filing a timely appeal is the reason why Murray's Actual Innocence exception could apply to his case, the gravity of these errors bears on the weight of Satterfield and McQuiggin claim.

B. This Court should Reopen the Judgment Pursuant to Rule 60(b)(6).

1. Satterfield, represents an extraordinary change in habeas law.

On Sept. 26, 2017, the U.S. Court Of Appeals, Third Cir. decided Satterfield v. D.A. of Phila, No. 15-2190, and McQuiggin v. Perkins,---U.S.,--- 133 S.Ct. 1924, 185 L.ED.2d 1019 (2013), extended this doctrine to allow petitioners who can make this showing of Actual Innocence to over come the ("AEDPA") one year statute of limitation. 2244(d)(1).

An intervening change in the law can constitute an "exceptional circum - stance" justifying rule 60(b)(6) relief. Harper v. Vaughn, 272 F.Supp.2d 527, 532 (E.D.Pa. 2003)(under Rule 60(b)(6),"in the exceptional case...an action may be reinstated on account of an intervening change in the law").

In Barnett v. Roper, 2013 WL 1721205 (E.D. Mo. April 22, 2013), the court very recently considered Martinez in the context of capital habeas proceedings as one of a number of factors bearing on whether Rule 60(b) relief should be granted, and found that Martinez, satisfied Rule 60(b)'s extraordinary circumstances" requirement. Id. at *14-17*. See also Lopez, 678 F.3d at 1135-36 (9th Cir. 2012). Pursuant to a Federal Civil Judicial Procedure Rule, and also; Federal Rules of Civil Procedure, Rule 60 pages 251, 252, Edition 2005 Fraud, whether intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party are express grounds for relief by Motion under amended subdivision (b). There is no sound reason for their exclusion. See: Exhibits:. C and D.Attached.

The incorporation of fraud and the like within the scope of the rule also removes confusion as to the proper procedure. It has been held that relief from a judgment obtained by extrinsic fraud could be secured by Motion within a "reasonable time"; which might be after the time stated in the rule has run. Fiske v. Buder, C.C.A. 8th, 1942, 125 F.2d 841; See also inferentially, Bucy v. Nevade Construction Co., C.C.A. 9th 1942, 125 F.2d 213. On the other, it has been suggested that in view of the fact that fraud was omitted from original Rule 60(b)(4) as a ground for relief, an independent action is the only proper remedy. See: Com. v. Bruce Murray, CP-51-CR-1206031-1962 before Judge Avellino, Bernard drugs planted on plaintiff, by Detective Gerrard #9189 and Detective Grace #887 who coerce false testimony from Wesson and Haughton, and also try to get eyewitness Mr. Strickland to falsify a statement; See: Exhibits: B ATTACHED Id. As pertaining to the affidavit of Mr. Strickland, the requirement was met 9545(b)(1)(ii) acts are 'unknown to

the petitioner.'" Burton, 121 A.3d at 1071 (emphasis original). the majority suggested that, while the presumption regarding public records is "reasonable when... petitioner retains access to public information, such as when a petitioner is represented by counsel," a pro se petitioner, who likely is incarcerated, does not have access to information otherwise readily available to the public, and, indeed, is "no longer a member of the public." id at 1072 (citing 42 Pa. C.S. §9543(a)(1). Quoting at length from our decision in Com. v. Bennett, 593 Pa. 382; 930 A.2d 1264 (2007), wherein we held that the public record presumption does not apply to PCRA prisoners who are abandoned by their counsel. The majority reasoned "[i]f our Supreme Court [in Bennett] has recognized express that, without the benefit of counsel, we cannot presume a petitioner has access to information contained in his own public, criminal docket, then surely it cannot presume a pro se petitioner's access to public information contained elsewhere."

Burton, 121 A.3d at 1073. Accordingly, the majority held that "the presumption of access to information available in the public domain does not apply where the untimely PCRA PETITIONER is pro se." Id.

Here, as in Barnett, numerous factors support granting Rule 60(b) relief.

2. Factors supporting Rule 60(b) relief.

A. Diligence: In Barnett, the Court considered the plaintiff's diligence in pursuing his current theory that the ineffectiveness of his trial and post collateral counsel provided cause for the procedural default of his claims." Barnett, at *15, the court found this factor to be neutral", where the plaintiff had not argued ineffectiveness, and Fraud upon the Court; and invoked Rule 60(b)(4), and consistently argued that his claims raised was not defaulted. id. Which was recognized in prior R&R Of Magistrate Welsh, Sept. 9 1999 Order No. 98-5866 RECOMMENDED that a Hearing be held to afford explanation for each peremptory challenge of a black venireperson See: page 9 of R&R n.2., plaintiff was represented by retained counsel L.Natali who abandon him for lack of fee cost; in which the Court Ruled An Attorney who undertake to represent a client assumes obligation toward his client which are to excused merely because the client is unable to pay as here, In re Bulen, 375 B.R. 858 (2007). Id.

Honorable A. Brody, ORDER that the R&R is not approved and adopted. The Mag. Judge's determination that petitioner is presently raising, and has properly exhausted, a 14th Amend. Batson claim is rejected.

The petition for habeas corpus is remanded to Mag. Judge to consider plaintiffs Ineffectiveness claims based upon the existing record.

Magistrate Welsh, made a new contrary R&R on Jan. 31, 2000, that these claims are not based on violations of Federal Constitution, or Federal Law which are not cognizable and simply drop from habeas corpus prior to consideration of questions of exhaustion or procedural default.

Magistrate Welsh, further states she decline to review plaintiffs claims, for under Pennsylvania Law there is no appeal of Right to the Supreme Court Of Pennsylvania after disposition of Appeal to Superior Court R.App. Proc. 1114 citing Ross v. Moffit, 417 U.S. 605 (1974); but in Moffit, that court said after appointing counsel for an indigent convicted person FIRST appeal of Right to a state appellate court; must also furnish the indigent with counsel on his subsequent discretionary appeal to the Highest State Court this is binding upon the State by virtue of 6th and 14th Amend; The U.S. Courts of Appeals reversed, holding that respondant was entitled to appointment of counsel both on his Petition for Review by State Supreme Court. However, in Halbert v. Michigan, the court held that the Due Process Clause and Equal Protection Clause required counsel in first appeal, even though the state treated first appeals as discretionary 545 U.S. 605, 616-17 (2005); Teague v. Lane, 489 U.S. 288 (1989) define the point of finality or conclusion of direct review as the date on which the Supreme Court denies a petition. Prior to ORDER of May 9, 2000, it was require by the State for Exhaustion purpose to Appeal to State Supreme Court. This Court in R&R Diane Welsh Jan, 31, 2000 page 4 has held that the failure of counsel to file a timely allocatur petition[1] constitutes a procedural default barring habeas review as well as those preserved in the lower Court.

To overcome any procedural default by showing cause for the default and prejudice therefrom.

Even if in Murray's prior petition, he violated an adequate state procedural rule, he may overcome any procedural default by establishing the cause for such default and prejudice therefrom. As the Supreme Court explained in Murray v. Carrrier, 477 U.S. 478, 488 (U.S. 1986).

---
[1] none but func appeals maybe granted where unusual circumstances prevented a party from timely filing in order to prevent injustice. In Cook v. Unemployment Comp., 543 Pa. 561, 671 A.2d 1130 (1996) and Bass v. Com, 485 Pa. 256, 401 A.2d 1133 (1979).

13

["T]he existence of cause for a procedrual default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsels efforts to comply with the State's procedural rule. The Supreme Court declined to provide an exhaustive catalog of such objective impediments to compliance with a procedural rule", rather it explained that "cause" requires" a showing that the factual or legal basis for a claim was not reasonable available to counsel," or that" some interference by officials... made compliance impracticable..."id. "cause...must be something external to the petitioner, something that cannot fairly be attributed to him." Coleman v. Thompson, 507 U.s. 722, 753 (1991).

A "factual or legal basis for a claim' may not be"reasonable available" even where certain facts are known to a petitioner. That is, if the meaning or the significance of the facts is not known, they are unavailable. See: Price v. Johnston, 334 U.S. 266, 291 (1948)("the primary purpose of habeas corpus proceeding is to make certain that a man is not unjustly imprisoned. And if for some justifiable reason he was previously unable to assert his right or was (**unaware of the significance of relevant facts**), it is neither necessary nor reasonable to deny him all opportunity of obtaining judicial relief.")(emphasis added); Ambrose v. Booker, 684 F.3d 638, 645 (6th Cir. 2012)(finding cause to excuse procedrual default where "petitioners could not have known" (Judge Savitt refuse to take Oath Of Office Id.)or there was exculpatory eyewitness testimony See: Exhibit: B to the crime and that co-defendant's was coerce by detectives See: Exhibit: A), nor did he know there had been a policy in the D.A."s office to exclude Blacks from jury pool etc. Where if Pamela Cohen Esq. would have done an extensive internal investigation on the computer and legal news she would have had the needed update research to raise the perserved trial claims Swaine/pre-Batson.1.

In James, has shown sufficient cause for not raising his claim, ground in his initial federal habeas corpus suit, James v. Cain, 56 F.3d 662, 665-66 (5th Cir. 1995). Such cause was grounded in the fact that James, was apparently unaware of that claim until he saw Memorandum denial of first Federal Habeas Corpus. United States v. Biberfeild, 957 F.2d 98, 104 (3d Cir. 1992)(finding cause to excuse procedural default where petitioner knew or believed that the key government witness was lying at trial but he did not have "the facts necessary to prove the alleged perjury" until after trial when he received a response to his Freedom of Information "It would be fundamentally unfair to him to say that because he knew or believed at trial that [the government's witness] was lying, he can now be barred from asserting it."

---

1. Thus a later Judicial decision which seems to change law has not really changed it at all but has only discovered the true rule which was always the law. It follows that any judicial "change" in the law must necessarily be retroactive Com. v. Cain Jan. 22, 1974, 471 Pa. 140.

[W]hat is essential is the ability to act upon that knowledge' Hartman v. Bagley, 492 F.3d 347, 358 (6th Cir. 2007).

The majority suggested that, while the presumption regarding public records is "reasonble when...petitioner retains access to public information such as when a petitioner is represented by counsel, a pro se petitioner, who likely is incarcerated, does not have access to information otherwise readily available to the public, and indeed is no longer a member of the public" Id. at 1072 (citing 42 Pa. C.S. sec. 9543(a)(1). Quoting at length from our decision in Com. v. Bennett, 593 Pa. 382, 930 A.2d 1264 (2007), wherein we held that the public record presumption does not apply to PCRA prisoners who are abandoned by their counsel. Id.

As soon as plaintiff, realized retained federal habeas counsel abandoned him in his prior proceeding, because plaintiff failure to continue to pay, counsel not allowed to withdraw on that basis, but did far worst, retain counsel failed to file anything on plaintiff's behalf and Mr. Murray notified Judge Anita Brody of this fact. See: United States v. Hass, 623 F.3d 1214, 1221 (8th. Cir. 2010); petitioner returned to state court and presented claims that trial counsel had been ineffective, and that his initial post-conviction counsel had been ineffective, for not pursueing these claims Fraud upon the court, Policy in D.A. Office to remove Blacks from the jury selection and Newly Discovered fact, See: Com. v. Murray, No. 1661 EDA 2008.

NOTE THAT: There is pending litigation in the Pennsylvania Superior Court concerning David Savitt refuseing to take OATH OF OFFICE, who at the time of plaintiffs trial he didn't have it, which makes ALL ACT'S done by him in plaintiff's trial Null and Void, strap with the fact the Arresting Detectives in this matter falsified evidence, at the time of arrest, to win a conviction See: Exhibits: A and B.-c .

And plaintiff filed his Rule 60(b) motion with in a reasonable time of Satterfield decision and McQuiggin, i.e. within a "reasonable time:", Fed. R. Civ. Proc. 60(b)(c)(1), after Satterfield/McQuiggin revived his claim that he is Actal Innocence and should overcome any procedrual barrier, particularly given that during the entire time of arrest, up to Satterfield. McQuiggin was decided, plaintiff's separate appeal is pending in the Pennsylvania Superior court See: No. 588 EDA 2016 and No. 1624 EDA 2017. Plaintiff has been alleging the ineffective assistance of initial post conviction counsel, petitioner has consistently and diligently asserted these facts petitioner's diligence stronly favors rule 60(b) relief.

b. Finality: court's frequently consider "the general desirability that a final judgment should not be light disturbed." Lasky, 804 f.2d at 256. However, the court should "give little weight to [any] appeal to the virtues of finality". because Rule 60(b)(6) is "a provision whose whole purpose is to make an exception to finality".

Gonzalez 545 U.S. at 529. Accord Ungar, 599 F.3d at 89 (quoting Gonzalez); Thompson, 580 .f.3d 442 (under Rule 60(b)(6) general interest in finality overcome by "the incessant command of the court's conscience that justice be done in light of all the facts); Randall v. Merrill Lynch; 820 F.2d 1317, 1322 (D.C. Cir. 1987), (House v. Bell, _____ U.S. _____(2006)(Rule 60(b) is the mechanism by which courts temper the finality of judgment with the neccessity to distribute justice.") Compton, 608 F.2d at 103 (under Rule 60(b)(6), interest in "finality of judgment ...should never be used to thwart the objectives of the blind goddess of justice itself (internal quotation marks omitted).

**c. Interest in merits review:** "the main application of Rule 60(b) is to those cases in which the true merits of a case might never be considered" unless the case is reopened. Ruiz 504 F.3d at 531-32 (quoting Fackelman v. Bell, 564 F.2d 734, 735 (5th Cir. 1977)). Accord Kiapprott, 335 U.S. at 615 (Rule 60(b)(6) Relief favored when needed to obtain Merits Review); Lasky, 804 F.2d at 256 n.10 (same).

Here, Murray, pro se has never had a full review of the "True Merits" of his claims, rather, the Third Circuit refused to consider the evidence proffered in support of Actual Innocence claims Due solely to Procedural Bar due to P.C.H.A. Counsels failure to raise those claims on Direct Appeal, or Statute of Limitation. This brings the case squarely under McQuggins and Satterfield, which permits Federal Court to reach otherwise precluded claims where post conviction counsel provided ineffective assistance.

Moreover, the facts of Mr. Murray's case make the need for Ture Merits Review (and Thus, Rule 60(b)(6) Relief) particularly compelling.

First, the interest in allowing true merits review is especially strong here because his underlying Actual Innocence, embedded on Fraud is "Substantial", inconjuction with the fact David Savitt Lack Oath of Office".

Mr. Murray, claims were not DEFAULT See: R &R No. 98-5866 Sept. 9th, 1999 page 2 and 8. Also See: R&r Jan. 31, 2000 Id. of this 60(b) page 12 A. Diligencel.

Here, the Com. v. Murray, CP-51-CR-1111091-1982 Direct Appeal to the Supreme Court in 1986 and The Superior Court No. 1661 EDA 2008 recognized that the proffered evidence would have warranted a hearing, but for the (inadequate) State Court Time Bar; See: Exhibit: B for an undate letter addressed to the Centurion Ministries, that was sent to Hebeas Attorney Louis Natali who fail to raise, in which Gregory Strickland the sole eyewitness asserted that

16

Detectives attempted to have him identify appellant, and the other acts of improper police tactics through trial, (but for time bar, "the factual basis that is offered would be sufficient to at least raise a Question which would require the testimony to be heard"). Accordingly, the majority held that "the presumption of access to information available in the public domain does not apply where the untimely PCRA petitioner is pro se. Com. v. Bennett, 593 Pa. 382, 930 A.2d 1264 (2007), See: Com. v. Burton, 121 A.3d at 1071 (2017).

The Third Circuit never addressed the merits of the proffered evidence the plaintiff is Actual Innocent and Trial Counsel and PCHA Counsel is ineffectively for they failed to litigate the issue, because they believed it lack Merit "and from reviewing evidence that counsel "failed to develop" during the first post Collateral petition proceedings as a result of post-conviction counsels ineffectiveness. See: Murray v. Vaughn, 98-5866 Civil; (ineffectiveness of post conviction counsel is not an exception to §2254(e)(2)' requirements, citing, inter alia Coleman).

Here, neither trial counsel's investigation nor counsels decision not to litigate Fraud Upon the Court, Actual Innocent supported by Affidavits of eye-witness testimony and alibi witness testimony was unreasonable. Counsel never talked to Mr. Strickland, the sole eyewitness, not alibi witnesses. In this case where death penalty was an option, it was patiently unreasonable for trial counsel to throw up her hands with out taking any basis steps to investigate (1). Eyewitness and (2). Alibi witnesses or (3). Investigate Detectives practice of formulating testimony or planting drugs See: Exhibits Attached; petitioner was prejudiced by counsel's deficient performance. Had counsel provided all relevant evidence and witnesses to the crime and alibi witness and co-defendant Wesson.

The recognized strength of Murray's underlying Actual Innocent claim strongly supports reopening the case so they can reviewed on the "true" merits. See: Satterfield and Lasky, 804 F.2d at 256 n.10 (case for Rule 60(b)(6) relief is especially strong when "there is merit in the ...[movant's underlying arguments ultimately carry the day, they are substantial"); Compton, 608 F.2d at 102-03 (when movant has significant claims, any doubts should be resolved in favor of setting a side" prior judgment).

Second, the interest in the true merits review (and, thus, Rule 60(b)(6)relief) is even stronger here than in any ordinary civil case with

17

strong claims because Mr. Murray, pro se claims are raised in the context of his first petition for a Writ of habeas corpus. "The Writ of Habeas Corpus plays a vital role in protecting Constitutional Rights". Slack, 529 U.S. at 483, and has been "aptly described as the 'highest safeguard of liberty,'" Lonchar, 517 U.S. at 322 (quoting Smith v. Bennett, 365 U.S. 708, 712 (1961). See also Boumediene v. Bush, 553 U.S. 723, 798 (2008)(Habeas Corpus is "a right of first importance"), Johnson v. Avery, 393 U.S. 483, 485 (1969) (Supreme Court has constantly emphasized the fundamental importance of the Writ of Habeas Corpus in our Constitutional scheme"). Given the vital importance of Federal Habeas Review, "[d]ismissal of a First Federal Habeas Corpus" without merits Review" is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." Lonchar, 517 U.S. at 324 (emphasis in original). Accordingly. Rules applying to Habeas cases, including Rule 60(b)(6 should be interpreted and applied in a way that will" maintain the courts freedom to issue the Writ." Lonchar, 517 U.S. at 322, See also Murray v. Vaugh No. 98-5866, 06/25/16; Thompson, 580 F.3d at 444.("Conventional Notions of Finality of Litigation have no place where Life or Liberty is at stake and Infringement of Constitutional Rights is alleged."(quoting Sanders v. United States, 373 U.S. 1, 8 (1963). Thus, the fact that this is a habeas case weighs heavily in favor of allowing merits review.

Third, the interest in the true merits review (and, thus Rule 60(b)(6) relief) is even stronger here than in ordinary habeas case with strong claims, because this was a Capital Case[1]." As the Supreme Court has repeatedly stated...'death by Incarceration is different'...It is of vital importance to the plaintiff and to the community that any decision to impose Death by Incarceration (LIFE WITHOUT THE POSSIBILITY OF PAROLE). Fahy v. Horn, 240 F.3d 239, 244-45 (3d Cir. 2001). Accord Ford v. Wainweight, 477 U.S. 399, 411 (1986(Capital case requires "the high regard for truth that befits a decision affecting the Life or death of a human being such as here where plaintiff is Actual Innocence)"; See: Exhibit: E. (Atty. Pamela Cohen interrogatories).

1. Attorney Pamela Cohen Ineffective See: Statement made by her to interrogatories addressed to her quoting that defendant lucky not to get the death sentences! By this Death qualified jury.

The Third Circuit Court Of Appeals stated in granting habeas petition Rule 60(b)(6) Relief Motion for credible Actual Innocence.

> [N]o Federal Court has considered the merits of [Mr.Murray] Constitutional claims...[C]ourts universally favor judgment on the Merits, and...the underlying case here is sufficiently significant [and] potentially meritorious that it should not be cut off at its knees. Equity would not deny Mr. Murray a Hearing on the Merits.

.The Public Interest also supports granting Rule 60(b)(6) Relief in this case. See: Valero Terrestrial Corp. v. Paige, 211 F.3d 112 (4th Cir. 2000) Public Interest" is relevant factor under Rule 60(b)(6); W.L. Gore & Associates Inc. v. C.R. Bard, Inc., 977 F.2d 558, 562 (1992)(same), Bros Inc. v. W.R. Grace Man Co.,320 F.2d 594, 609 (5th Cir. 1963)(same). The "public interest clearly favors the protection of Constitutional Rights" in any case. Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 884 (3rd. Cir. 1997).

In this case, where Mr. Murray is sentence to death by incarceration (Life Without Any Possibility Of Parole) Seeks Federal Habeas Review of the Constitutionality of this sentence, there is an "overwhelming Public Interest" in "insuring THAT AN INNOCENT MAN IS NOT IMPRISON FOR A CRIME HE DID NOT DO! Which grants habeas base on the observation that "concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system," reflecting" a fundamental value determination of our Society that it is far worse to convict an innocent man that to let a guilty man go free: Rivas v. Fischer, 687 F.3d 514, 549 (2d. Cir. 2012)(and) Schlup v. Delo, 513 U.S. at 325 (1995).

## CONCLUSION AND PRAYER FOR RELIEF

This Court enjoys brfoad discretion to remedy injustice. "The disposition of motion under Fed. R.Civ. P. 60(b) is committed to the discretion of the district court." Martinez-McBean v. Gov't of the Virgin Islands, 562 F.2d 908, 911 n.2 (3rd Cir. 1977) (citaion omitted). Although not lmitless, "Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case" Id. at 911 (citations omitted). under the Exstraordinary circumstances of Mr. Murray case, this Court should reopen the case and grant habeas relief.

19

WHEREFORE, Petitioner respectfully request that this Court:

1. Direct Respondents to respond to this motion;
2. Allow Petitioner to submit a reply to the Respondents' response;
3. Appoint Counsel;
4. Schedule oral argument and a hearing;
5. Re-open these proceedings under FRCP 60(b)(6); and
6. Grant all other and further relief which the Court mught deem just,
   proper and equitable.

Respectfully submitted,

/s/ Bruce Murray

Bruce Murray AY-2900 pro se
P.O. Box-945
Marienville, Pa. 16239

## CERTIFICATE OF SERVICE

I, Bruce Murray, hereby certify that on this __17__ day of __Jan.__, 2018, a copy of the foregoing document has been served by first class mail upon the following person:

Bruce Murray AY-2900 pro se

S.C.I. Forest

P.O.Box-945

Marienville, Pa. 16239

Date: January 17th, 2018

20

I, DOUGLAS HAUGHTON, being duly sworn according to law, a
and say that the following statements are true and correct t
best of my knowledge, information and belief:

Attached to this Affidavit are two affidavits recently pre
by me in which I discuss and recant my confession and test
concerning the death of Eric DeLegal, also known as Kaboo
These affidavits were not notarized at the time they were
because I am incarcerated in prison and did not have access
Notary Public. However, the statements made in those docu
are true and correct.

I was arrested on February 24, 1981, and taken to the Fe
Building in Philadelphia. I was kept there for approximat
half a day without being able to talk to an attorney and wi
being told of my rights to have a lawyer or to be silent. A Fe
agent named Carpinelli told me that they had photographs and i
proving my involvement in a bank robbery. I was also questione
Philadelphia detective named Girard about the murder of Eric "Ka
ie" DeLegal. I was punched, shoved, and slapped in the face by
Carpinelli, who threatened me with a very stiff sentence on the
robbery and with a murder charge. Detective Girard kept sugge
that I cooperate. They bullied and insisted that I sign state
naming Bruce Murray and Gregory Holden in this murder, as we
Tyrone "Scotty " Wesson. I was frightened and I believed that
would not stop and that things would not get better until I a
the statements that they wanted and agreed to testify at the tr

What really happened when "Kaboobie" died is this: I met '
tie" on 22d Street and he asked where we could go to buy
reefer. We went to "Kaboobie's" house because "Kaboobie" ow
$150.00. We could see that "Kaboobie" was high on drugs as so
we went in his house. "Kaboobie" noticed that there was a
and he reached for a sawed off shot gun that he kept right i
the front door. As he reached for it the gun fell and "S.
grabbed "Kaboobie" and the gun. "Kaboobie" got loose and g
the gun and got his finger on the trigger and they kept scu
and the gun went off and hit "Kaboobie" in the chest. "Kab
went down and I saw him going for his gun while he was
floor. "Kaboobie" started shooting and he hit "Scotty" i
arm: at that time I grabbed "Kaboobie" and the gun and h
himself twice while I was trying to stop him from shooting "Kab
again.

Sworn to and subscribed before me
this ___ day of April 19 85

ARLENE RUDNEY HALPERN
Notary Public Phila. Phila Co.

## To Mr. McCloskey c/o Mr. Hepburn

Dear sir, I have testimony that can help someone who is innocent. He's been falsely convicted. I seen the brother bruce Murry name in the Centurion freinds Volunteers and I remembered the whole situation. I remember talking with a Attorney of His many years ago about coming forward and I never heard from her again. Through research I found out her name was Irene Cotton but sometime later I found out she was Dead. And because I was on Drugs and always on the run this is the reason she could never contact me. I heard that Centurion Ministies, Inc. Help innocent people. I heard they helped this guy name Edward Baker win His freedom. I'm trying to find out who Bruce Murry's Lawyer is? When I was 15 years old a Murder of my freind Happened and when I was question by Phila Homicide Detective Gerrand and the D.A. they showed me pictures of Bruce and told me to say it was Him. But I Didn't because He was not one of the Killers. I seen Douglas Horghton and heard His voice and they told me that Scotty told on His self and Murry so they only need me to point Murry out and because I wouldn't they counseled the line up and that ▓▓▓▓ I was so afraid to say Anything at that time because of Elliot Burton and guys Around the way and Douglas Two Nephews I just said Nothing as

Exhibit B 1 of 2

SCI Forest, P.O. Box 945
P.O. Box 945
Marienville, Pa. 16239

    To who it may concern, I Gregory Strickland, hereby
under penalty of perjury offer this verified Affidavit to
the fact. Yes, I did reach out to Mr. Hepburn of the
Innocent Project of Centurion Ministries concerning
Bruce Murry, no one have attempted to reach me so I
thought my help was not needed. Yes, I was interviewed
in 1981 by Police. I was contacted by police and made
to participate in a line up in 1982 as a witness. I
did not cooperate because the police showed me a picture
of Bruce Murry an told me to pick him out of this line
up. I told them I did not see Bruce and didn't know
him. I eventually refused the line up and it was ended.
    I, as you know, was with my freind and childhood
Mentor Eric Delegal when he was killed and all I'm trying to
do is be a voice for him. I was there, I know who was
inside his home the night he was killed, He told me he
let Douglas Horton and another guy in when he came to get
the weed from the cellar for them, Plus after the shots, I ran
upstairs as Douglas Horton and the other guy was leaving. They
went separate ways Douglas went toward his home on 25th street
and the other guy ran towards 24st. I knew Douglas all my

Exhibit: B

WOULD hAVE BEEN like Siding AgAinsT them, I AlrEADY WAS
Being StAlKED, AND I DIDN't WANT DouglAs oN my BAck
ANd All His FreiNDs FRom my END, So I KepT QuieT.

Gregory Strickland

7-20-11
Gregory Strickland

Commonwealth of Pennsylvania
County of Forest

Subscribed and sworn to me this 20th day of July 11 20

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Laura Blake, Notary Public
Jenks Twp., Forest County
My Commission Expires July 21, 2013

(form header fields, partially legible)

## ORIGIN AND DETAILS OF COMPLAINT:

CASE #82-4717

a. On Saturday, 9/11/82 at approximately 3:05PM inside 1817 Wharton St. Det. GIRARD #9189, Homicide Unit did arrest Bruce MURRAY 22 N/M, res. 1817 Wharton St. for Murder 2502, Robbery 3701 F-1, Burglary 3502 F-1, Conspracy 903 F-1, PIC 907 M-1, POW M-1.

At the time of arrest the defendant did have in his possession (25) light green pills in his left pants and (9) light green pills in an manila envelope.

b. Pol. Robert M DAISS # 1543, Narcotic Unit was assigned to Case #82-4717 on 9/11/82.

## 2. INTERVIEWS AND INTERROGATIONS:

a. Complainant: Det. GIRARD #9189, Homicide Unit:

On Saturday, 9/11/82 at approximately 3:05PM inside 1817 Wharton St. I arrested Bruce MURRAY 22 N/M, res. 1817 Wharton St. for Murder 2502, Robbery 3701 F-1, Burglary 3502 F-1, Conspracy 903 F-1, PIC 907 M-1, POW M-1.

At the time of arrest the defendant was searched and confiscated from his left pants leg were (25) light green pills and from his right pant leg in a manila envelope were (9) light green pills.

The defendant was taken to Homicide Unit Hdqts. for further processing.

b. Defendant: Bruce MURRAY 22 N/M, res. 1817 Wharton St. was interrogated by Pol. DAISS # 1543, Narcotic Unit inside Homicide Unit Hdqts. and he was informed of the narcotic charges being placed against him and also his Constitutional Rights and he wished to remain silent at this time.

## 3. ACTION TAKEN:

a. Conducted the above interviews and interrogations.
b. Issued PR#889210 and Analysis Report for the confiscated narcotic items that were forwarded to Police Chemical Lab.

INVESTIGATOR (Type and Sign Name): Pol. R.M. DAISS # 1543

SERGEANT:

LIEUTENANT:

(Rev. 12/74)

Exhibit: C

| CHRONOLOGY OF INTERROGATION AND/OR CUSTODY | | CITY OF PHILADELPHIA POLICE DEPARTMENT | | | CASE NO. H80-444 | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | DC NO. 80-17-66758 | | | |

COMPLAINANT (Last Name) (First) (Middle) — DELEGAC ERIC — AGE 20 — RACE N. — RESIDENCE 2414 Montrose St.

SUSPECT OR DEFENDANT (Last Name) (First) (Middle) — Murray, Bruce — AGE 22 — RACE NM — RESIDENCE 1817 Wharton St.

| DAY AND DATE | TIME BEGUN | ACTION TAKEN | BY WHOM | LOCATION | TIME ENDED | DAY AND DATE | RECORDER |
|---|---|---|---|---|---|---|---|
| SAT. 9-11-82 | 3:00 PM | ARRESTED ON WARRANT 112875 | McNesby Grace | INSIDE 1817 WHARTON St. | 3:15 | 9-11-82 | Grace 887 |
| 9-11-82 | 3:15 | EWRTE. TO ROB. DIV. | Fitzgerald 4189 White 7551 | P.A.B. Rm. 104 | 3:50 PM | 9-11-82 | Grace 887 |
| 9-11-82 | 3:50 PM | FRISKED PLACED IN INTER. ROOM ENVLOE FOUND 117 (PILLS) HANDCUFFED | " " | Rm. 117 | 3:35 PM | 9-11-82 | Grace 887 |
| 9-11-82 | 3:35 PM | 75-229 | Grace | " | 3:50 PM | 9-11-82 | Grace 887 |
| 9-11-82 | 3:50 PM | Drugs found in cuffs of sweat pants | Gerard #9189 | PAB. Rm. 104 | 4:00 PM | 9/11/82 | Gerard #9189 |
| 9-11-82 | 4:00 PM | Advised + Warned | Gerard #9189 | PAB. Rm. 104 | 4:10 PM | 9/11/82 | Gerard #9189 |
| 9-11-82 | 4:10 PM | Statement | Gerard #9189 | PAB Rm. 104 | 4:30 PM | 9/11/82 | Gerard #9189 |
| 9-11-82 | 4:30 PM | Read + Signed | Gerard #9189 | PAB Entry mir | 4:35 PM | 9/11/82 | Gerard #9189 |



**Docket Number: CP-51-CR-1206031-1982**

# CRIMINAL DOCKET

Court Case

Commonwealth of Pennsylvania

v.

Bruce Murray

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|------|-----------|-------|---------|---------------------|-------------|-----|
| 1 | 1 | | 35 § 780-113 §§A16 | KNOWING/INTENTIONALLY POSS CONTROLLED SUBST | 09/11/1982 | M 122815-0 |
| 2 | 2 | | 35 § 780-113 §§A30 | MFG/DEL/ OR POSS W/I MFG OR DEL CONTRL SUBS | 09/11/1982 | M 122815-0 |

## DISPOSITION SENTENCING/PENALTIES

| Disposition | | |
|---|---|---|
| Case Event | Disposition Date | Final Disposition |
|   Sequence/Description | Offense Disposition | Grade   Section |
|     Sentencing Judge | Sentence Date | Credit For Time Served |
|       Sentence/Diversion Program Type | Incarceration/Diversionary Period | Start Date |
|         Sentence Conditions | | |

**Migrated Disposition**

| Migrated Dispositional Event | 04/25/1983 | Final Disposition |
|---|---|---|
| 1 / KNOWING/INTENTIONALLY POSS CONTROLLED SUBST | Not Guilty | 35 § 780-113 §§ A16 |
|   Avellino, Bernard J. | 04/25/1983 | |
| 2 / MFG/DEL/ OR POSS W/I MFG OR DEL CONTRL SUBS | Nolle Prossed | 35 § 780-113 §§ A30 |
|   Avellino, Bernard J. | 04/25/1983 | |

## COMMONWEALTH INFORMATION      ATTORNEY INFORMATION

| COMMONWEALTH INFORMATION | ATTORNEY INFORMATION |
|---|---|
| Name:   Philadelphia County District Attorney's Office | Name:   Pamela P., Esq. |
|   Prosecutor |   Private |
| Supreme Court No: | Supreme Court No:   025381 |
| Phone Number(s): | Rep. Status:   Active |
|   215-686-8000   (Phone) | Phone Number(s): |
| Address: | Address: |
|   3 South Penn Square |   1421 WALNUT STREET |
|   Philadelphia, PA 19107 |   PHILADELPHIA, PA |

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 12/09/1982 | | Unknown Filer |
| Appeal | | | |
| 1 | 04/25/1983 | | Migrated, Filer |
| Migrated Automatic Registry Entry (Disposition) Text | | | |

Exhibit C2

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 8 Pa.C.S. Section 9183.

Ex. C 3

# Sex, lies and frame-ups by police?

## Inmate tells of trysts

**Kurt Heine**

*Daily News Staff Writer*

From a police department already polluted by frame-ups, stealing and planted evidence comes another scandal: an allegation that cops coaxed prisoners to lie in murder cases in exchange for sex visits with loved ones.

Ex-dope peddler Andre Harvey, now in prison 12 years for a murder he claims wasn't this doing, makes that assertion in a recent appeal of his murder con-

viction.

He charges that homicide detectives supplied Charles Atwell, the prosecution's eyewitness against him, and two convicted co-conspirators, with "sexual favors" in exchange for his false eyewitness testimony.

Police would not comment, but a spokesman for the district attorney's office noted that Harvey already had lost three appeals. One of the detectives who worked Harvey's case, now retired, called the charges "absolutely not true."

Harvey's allegation echoes the claim of another convicted murderer who says detectives coerced his confession by allowing him to have sex with his wife and girlfriends.

"I know this is probably bigger

than just Andre Harvey," said his lawyer, David M. McGlaughlin. "It's certainly shaping up as a pattern."

Two women admit to cop-arranged sex sessions with the prosecution's witness against Harvey, according to McGlaughlin.

In a sworn statement to a private investigator, one of the women admits to "three or four" sex visits with Atwell, the witness. The visits, she said, took place in homicide interrogation rooms in the Police Administration Building.

With its bright fluorescent lights, metal chairs bolted to the grime-covered floor and two-way glass, an interrogation room may not seem the ideal spot for a hotbed of romance.

But the amorous witness and his lover improvised, according to Harvey's appeal.

"I would get a call to go to the Roundhouse to visit him," one of the women told the investigator. "The detective — I'm not sure if it was the same one every time — we would get on the elevator, and he would take me to a small room where Charles was. The room would have a chair or two. I don't remember if it had a table. It wasn't always the same room. Once inside, me and Charles would have sex."

They did it "in the chair" or "lying on the floor," according to the woman's statement.

Another woman told the private investigator in a sworn statement that she had sex with another prisoner in one of the

homicide rooms.

"The only things in the room would be a desk and a chair or two," she said. "We would have sex on the chair, or standing up."

Police spokesman Capt. Marvin Burton did not reply to requests for comment on the allegation. Bill Davol, the district attorney's spokesman, said Andre Harvey "has already lost three appeals of his conviction and life sentence.

"Now he's just going another route," said Davol, adding that his office had not responded to Harvey's post-conviction relief petition.

The aim of the petition is an evidentiary hearing that would give Harvey a chance to prove

See **SEX** Page 23.

EDUCATION

**Lawmakers p**
**to separate fa**

RYAN J. FOLEY
ASSOCIATED PRESS
IOWA CITY

this year. "The
a thing as an

father of tw

Thu
201
S
of t
Font
S:
Bryi
20,
the I
Sr. a
(Cur
Sh
Pres
Scho
retir
Colu
a Re
She
St. I
Chur
Colu
Auxil
Hosp
Nursi
the Oi
Star, (
#366.
She

# In Philadelphia, claims of falsehoods from within city's police department

*Officers claim in lawsuit they were ordered to lie on drug arrest paperwork*

**ANTHONY IZAGUIRRE**
ASSOCIATED PRESS

PHILADELPHIA — Officers in the Philadelphia Police Department's narcotics unit have sued their bosses for allegedly ordering them to lie on arrest paperwork about their informants to "make the drugs go away," a practice that experts say raises the possibility of corruption and illegitimate prosecutions.

According to the December civil rights lawsuit, narcotics bureau commanders told their officers to disobey the department's rules and illegally omit names, change locations and modify other information on documents that are used as evidence during drug prosecutions if the arrestee is willing to become an informant.

"This flipping process is kind of like the quick

and dirty way to do the confidential informant process without following the rules required to ensure due process and integrity," said attorney Brian Mildenberg, who is representing the group of African-American plaintiffs that include a staff inspector, a lieutenant and a captain who all work in the narcotics bureau and say they were racially discriminated against for

refusing to carry out the request.

The charge made its way into the federal lawsuit after allegations of procedural and racial misconduct in the narcotics unit were announced during a September press conference held by the Guardian Civic League, an organization that represents black police officers and is a plaintiff in the case.

**Matthew T. Kingston, DMD**
**Healthy Smiles Dental**

**Crowns and Veneers**
**in ONE office visit!**
• NO temporary cr

RISTENBATT VACUUM CLEANER SERVICE

**People Love Miele Vacuums**
**A Winning Team:**
**Ristenbatt Vacuum and Miele**
Providing Superb Products and Service
*As a "Vacuum Specialist" we enable*
*you to make a better Miel*

O

La

Exhibit C 4

# Commonwealth of Pennsylvania



# CONSTITUTIONAL OATH OF OFFICE

Commonwealth of Pennsylvania

ss:

County of Philadelphia

I, DAVID N. SAVITT                                         elected

and commissioned by the Governor of the Commonwealth of Pennsylvania to be a

JUDGE OF THE COURT OF COMMON PLEAS OF THE FIRST JUDICIAL DISTRICT,

in and for the Commonwealth of Pennsylvania, do solemnly swear (or affirm) that I will support, obey and defend the Constitution of the United States and the Constitution of this Commonwealth and that I will discharge the duties of my office with fidelity.

Taken, sworn and subscribed before me this

SECOND                      day of

JANUARY            A.D. 19 84

PRESIDENT JUDGE, PHILADELPHIA
COURT OF COMMON PLEAS

DAVID N. SAVITT, J.

(SEAL)

*Exhibit: D*

30-417 (Rev. 8/83)

9. Is there anything else you would like to say
   a. About any of the questions above?

   No

   b. About your representation?

   No

   c. About the case otherwise?

   I thought defendants were reasonably lucky not to get the death penalty.

Please fashion your own form of affidavit below, and sign in the presence of a notary. Kindly retain the copy for your own files and return the original to counsel for distribution and filing, at your very earliest convenience, no later than 10 days after receipt.

*Exhibit: E*

*Exhibit B:U*

TR1
Printing ...
 dn95
12/05/95

SEX, LIES AND FRAME-UPS BY POLICE?

==============================================================================

PHILADELPHIA DAILY NEWS
Copyright (c) 1995, Philadelphia Newspapers Inc.

DATE: Tuesday, December 5, 1995          TAG: 9501270286
PAGE: 04          LENGTH: 104 lines          EDITION: PM
SECTION: LOCAL

SEX, LIES AND FRAME-UPS BY POLICE?
INMATE TELLS OF TRYSTS

SOURCE: By Kurt Heine, Daily News Staff Writer

TEXT:     From a police department already polluted by frame-ups, stealing and
planted evidence comes another scandal: an allegation that cops coaxed
prisoners to lie in murder cases in exchange for sex visits with loved ones.
    Ex-dope peddler Andre Harvey, now in prison 12 years for a murder he claims
wasn't his doing, makes that assertion in a recent appeal of his murder
conviction.
    He charges that homicide detectives supplied Charles Atwell, the
prosecution's eyewitness against him and two convicted co-conspirators, with
''sexual favors in exchange for his false eyewitness testimony."
    Police would not comment, but a spokesman for the district attorney's
office noted that Harvey already had lost three appeals. One of the detectives
who worked Harvey's case, now retired, called the charges "absolutely not
true."
    Harvey's allegation echoes the claim of another convicted murderer who says
detectives coerced his confession by allowing him to have sex with his wife
and girlfriends.
    ."I know this is probably bigger than just Andre Harvey," said his lawyer,
David M. McGlaughlin. "It's certainly shaping up as a pattern."
    Two women admit to cop-arranged sex sessions with the prosecution's witness
against Harvey, according to McGlaughlin.
    In a sworn statement to a private investigator, one of the women admits to
''three or four" sex visits with Atwell, the witness. The visits, she said,

*Exhibit C*

took place in homicide interrogation rooms in the Police Administration Building.

With its bright fluorescent lights, metal chairs bolted to the grime-covered floor and two-way glass, an interrogation room may not seem the ideal spot for a hotbed of romance.

But the amorous witness and his lover improvised, according to Harvey's appeal.

"I would get a call to go to the Roundhouse to visit him," one of the women told the investigator. "The detective - I'm not sure if it was the same one every time - we would get on the elevator and he would take me to a small room where Charles was. The room would have a chair or two. I don't remember if it had a table. It wasn't always the same room. Once inside, me and Charles would have sex."

They did it "in the chair" or "lying on the floor," according to the woman's statement.

Another woman told the private investigator in a sworn statement that she had sex with another prisoner in one of the homicide rooms.

"The only things in the room would be a desk and a chair or two," she said. "We would have sex on the chair, or standing up."

Police spokesman Capt. Marvin Burton did not reply to requests for comment on the allegation. Bill Davol, the district attorney's spokesman, said Andre Harvey has already lost three appeals of his conviction and life sentence.

"Now he's just going another route," said Davol, adding that his office had not responded to Harvey's post-conviction relief petition.

The aim of the petition is an evidentiary hearing that would give Harvey a chance to prove his claim. If he wins the hearing, he gets a new murder trial.

None of Harvey's earlier appeals raised the sex allegations - which he heard while serving his sentence at Graterford prison, his lawyer says.

"Word filtered through the grapevine, as it often does, that these ladies had provided sexual favors to the guy who lied on him," McGlaughlin said.

Harvey hired a private eye, who buttressed the grapevine rumors with the women's statements.

Retired city homicide Detective Larry Gerrard, one of the detectives accused by Harvey of arranging the Roundhouse sex sessions, said he can't remember the case.

Bruce Murray AY2900
P.O. Box-945
Marienville, Pa. 16239

INMATE
MAIL



neopost
01/18/2018
US POSTAGE $007.10⁰

PRIORITY M...

ZIP 16239
041M12251506

c/o Judge Anita Brody
Clerk of United States District Court
For the Eastern District Of Pennsylvania
601 Market St. Room 2609
Phila, Pa. 19106





**UNITED STATES POSTAL SERVICE**®

USPS TRACKING #

9114 9014 9645 0866 1651 59



**PRIORITY MAIL** ★

★ ★ ★
TRACKED
★ ★ ★
INSURED
★

**UNITED STATES POSTAL SERVICE**®

For Domestic and International Use    Label 107, May 2014