# EXHIBIT 66

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH | : | NOVEMBER 1982 |
| v. | : | |
| TYRONE WESSON | : | NO. 1103 |

OPINION OF THE COURT

SAVITT, J.                                                May 31, 1983

Defendant Tyrone Wesson is charged with the murder of Eric De Legal on December 16, 1980. Pursuant to Pennsylvania Rule of Criminal Procedure 306, defendant filed a timely pretrial motion to suppress a typewritten and an oral statement allegedly given by him to Philadelphia police officers on the date of his arrest, September 20, 1982. In accordance with Pennsylvania Rule of Criminal Procedure 323, the Court conducted a hearing on the motion, and these findings of fact and conclusions of law follow.

Defendant moves for suppression of the statements on the following grounds:

1. that he was arrested without probable cause;

2. that he made no statements to the Philadelphia Police;

3. that any statements he may have given to the police were not voluntary given;

BruceMurrayDAOFiles0669

4. that he was not advised of his constitutional rights before the police interrogated him;

5. that any admonition of constitutional rights he may have been given by the police before interrogation were legally ineffective.

I   FINDINGS OF FACT

1. On December 16, 1980, Eric De Legal was fatally wounded by gunfire inside 2414 Montrose Street, Philadelphia.

2. On March 4, 1982, the Philadelphia Police obtained a written statement from Douglass Houghton implicating defendant in the shooting of Eric DeLegal. This statement appears in the record as Exhibit D-3.

3. On September 9, 1982, the Honorable Edward G. Mekel issued warrant number 112876 for defendant's arrest on charges, inter alia, of murder. The warrant appears in the record as Exhibit C-2.

4. Warrant number 112876 was issued based upon an affidavit of probable cause sworn to by Detective Ernest Gilbert of the Philadelphia Police Homicide Division. The following facts are recounted in the affidavit:

(1) the police found Eric De Legal inside 2414 Montrose Street on December 16, 1980, with gunshot wounds; (2) De Legal

BruceMurrayDAOFiles0670

was pronounced dead on the same day of gunshot wounds; (3) a post-mortem examination of De Legal's body by the Medical Examiner revealed the cause of death to be gunshot wounds and the manner of death to be homicide; (4) the police obtained a statement from Douglass Houghton on March 4, 1982, to the effect that he accompanied defendant and several other persons to the residence at 2414 Montrose Street on December 16, 1980, for the purpose of robbing Eric De Legal, that he heard gunshots from inside the residence after defendant and another person were admitted by DeLegal, and that defendant later stated that he had shot Eric DeLegal. The affidavit of Detective Gilbert appears in the record as Exhibit C-1.

5. Pursuant to arrest warrant number 112876, defendant was arrested by Philadelphia Police homicide detectives on Saturday, September 11, 1982, at approximately 10:10 A.M.

6. After his arrest, defendant was taken to the Philadelphia Police Administration Building (PAB) where he arrived at approximately 10:25 A.M.

7. At approximately 11:00 A.M. defendant was permitted to speak privately with his father and mother, and at 11:20 A.M. with his father alone, in Room 115 of the PAB. Defendant's father, Lamont Wesson, is a Philadelphia Police Officer, but he was not

- 3 -

BruceMurrayDAOFiles0671

involved in his official capacity in the investigation of the instant case. Mr. and Mrs. Wesson learned of defendant's arrest from the Philadelphia Police.

8. At approximately 12 o'clock noon, homicide detectives informed defendant he was under arrest for, and would be questioned about the killing of Eric DeLegal. A detective read a statement of constitutional rights to defendant from a standard police interrogation aid (form number 75 Misc-3) and asked him the questions appearing on the form. Defendant answered that he did not wish the assistance of counsel, but that he would not discuss the Eric DeLegal matter until he was given another opportunity to talk to his father.

9. Between 12:15 and 12:55 P.M., while attempting to locate defendant's father, who had left the PAB, detectives questioned defendant in connection with the death of one Lamar Reddick. Defendant was never a suspect in the investigation relating to Reddick's death. Defendant provided the detectives with a typewritten, signed statement containing information he had obtained about the Reddick killing. This statement, which is not subject to defendant's motion to suppress, appears in the record as Exhibit D-1.

- 4 -

BruceMurrayDAOFiles0672

10. At 12:55 P.M., defendant's father, Lamont Wesson, telephoned the PAB and defendant was permitted to talk to him.

11. During his meetings and subsequent telephone conversation with defendant, Lamont Wesson advised defendant that it was best not to answer questions, that the police could not promise anything in return for a statement and that it was defendant's decision as an adult whether or not to speak to the police or to request the assistance of a lawyer. The evidence suggests that Mr. Wesson may also have told defendant that the police had obtained the statement of a co-defendant, Douglass Houghton, implicating defendant in the alleged murder of Eric DeLegal. Mr. Wesson learned of the Houghton statement from homicide detectives.

12. At approximately 1:10 P.M., detectives again informed defendant that he would be questioned regarding Eric DeLegal's death. A detective then read a statement of constitutional rights to defendant as set forth in a standard police form (number 75-331D), which defendant signed. The form appears in the record as Exhibit C-4.

13. After defendant was informed of his rights, a detective asked him a series of questions that appear on a standard police department form (number 75-331E). The defendant answered those questions by stating that he understood his constitutional rights

BruceMurrayDAOFiles0673

and that he was willing to be questioned without consulting a lawyer. Defendant's answers are recorded on the police form, which defendant signed. The form appears in the record as Exhibit C-5.

14. From approximately 1:25 to 2:25 P.M., defendant was questioned by homicide detectives regarding the killing of Eric DeLegal and defendant's answers were typewritten into a formal statement. This statement, which defendant seeks to suppress, appears in the record as Exhibit C-6.

15. From approximately 2:25 to 2:40 P.M., defendant read and signed each page of his statement, Exhibit C-6.

16. Between approximately 2:50 and 3:05 P.M., defendant made an oral statement to Detective Gerrard of the Homicide Division regarding the Eric DeLegal case. Thereafter, Detective Gerrard recorded this statement on a standard police department form (number 75-229), which appears in the record as Exhibit C-7. Defendant also seeks the suppression of this oral statement.

17. Defendant is eighteen years old, has completed the tenth grade and has the ability to read and understand the English language.

18. At the time of his arrest, during his interrogation and at all other times relevant to the disposition of the instant motion, defendant was sober and alert, did not appear to be under

BruceMurrayDAOFiles0674

the influence of alcohol or drugs, and experienced no difficulty in communicating. Defendant did not complain of illness while in police custody.

19. At no time after defendant's arrest and during his interrogation did any member of the Philadelphia Police Department threaten or strike defendant or make promises to him. No person subjected defendant to physical or psychological duress during his interrogation at the PAB. The police took reasonable measures to insure defendant's comfort and security while he was in their custody.

20. Defendant did not request the assistance of counsel either before or during his interrogation. Defendant expressed no desire to remain silent, and his request to consult with his father before answering questions about the Eric DeLegal case was fully complied with by the police.

21. Defendant was arraigned at the PAB at 3:45 P.M., September 20, 1982, before the Honorable Louis J. Presenza. The arraignment occurred approximately five hours and thirty-five minutes after defendant's arrest.

BruceMurrayDAOFiles0675

II  CONCLUSIONS OF LAW

1. Defendant was taken into custody on September 20, 1982, pursuant to a validly executed warrant of arrest. Exhibit C-2. This warrant, number 112876, was supported by a sworn affidavit of Detective Ernest Gilbert, which recounted sufficient facts to justify a reasonably prudent person in the belief that a crime had been committed and that defendant Tyrone Wesson was the probable perpetrator. The warrant therefore issued upon probable cause and was in compliance with the United States and Pennsylvania Constitutions and Pennsylvania Rule of Criminal Procedure 119. Commonwealth v. Harper, 485 Pa. 572, 403 A(2d) 536 (1979).

2. Defendant was lawfully arrested by the Philadelphia Police on September 20, 1982, pursuant to a valid warrant. Accordingly, the statements defendant gave to the police during the interrogation following his arrest are not the fruits of an illegal arrest and are not subject to suppression on that ground.

3. Defendant made a free and unconstrained choice to provide both a written (Exhibit C-6) and oral (Exhibit C-7) statement to officers of the Philadelphia Police while in their custody on September 20, 1982. Considering the totality of circumstances surrounding defendant's interrogation, it is apparent that both

- 8 -

BruceMurrayDAOFiles0676

statements were the product of a free will and were not obtained through duress or through the imposition of conditions designed to undermine defendant's resistance to suggestion. See Commonwealth v. Hunt, 398 A(2d) 690 (Pa. Super. Ct. 1979).

4. Prior to giving any statements to police, defendant was adequately warned of his constitutional rights to remain silent and to have the assistance of counsel. Defendant waived these rights before questioning, and such waiver was voluntary, knowing and intelligent.

5. Since defendant made a free and unconstrained choice to give both a written and an oral statement to Philadelphia Police on September 20, 1982, and since defendant gave both statements wiht a knowledge and understanding of his constitutional rights, neither statement is subject to suppression on the grounds of involuntariness. Miranda v. Arizona, 384 US 436 (1966); Commonwealth v. Hunt, 398 A(2d) 690 (Pa. Super. Ct. 1979).

6. Prior to being subjected to interrogation, defendant was given a statement of his constitutional rights sufficient to comply with the mandate of Miranda v. Arizona, 384 US 436 (1966). Before the police obtained his written (Exhibit C-6) or oral (Exhibit C-7) statements regarding the instant case, defendant was given a second legally sufficient warning regarding his rights to silence and counsel.

- 9 -

BruceMurrayDAOFiles0677

7. Detective Gerrard was not required to readvise defendant of his constitutional rights before eliciting his oral statement (Exhibit C-7). Defendant had received all appropriate warnings less than two hours before making his oral statement. The questioning leading to the oral statement concerned the same matter about which defendant had previously been warned and questioned. The interrogation was conducted in the same general location where defendant had earlier been advised of his rights. Accordingly, there was no obligation for Detective Gerrard to readvise defendant of his rights to silence and counsel before further questioning. See Commonwealth v. Dixon, 475 Pa. 365, 380 A(2d) 765 (1977); Commonwealth v. Bennett, 445 Pa. 8, 282 A(2d) 276 (1971).

8. It was permissible for defendant to be questioned regarding the death of Lamar Reddick, even though he was not under arrest or specifically warned about that alleged crime. Since defendant was lawfully held in custody, he could be questioned regarding a matter unrelated to that for which he was arrested; and such questioning was conducted appropriately. Michigan v. Moseley, 96 S. Ct. 321 (1975); Commonwealth v. Miller, 407 A(2d) 860 (Pa. Super. Ct. 1980).

9. Defendant gave his statements to the police after obtaining all appropriate constitutional warnings, exhibiting his under-

BruceMurrayDAOFiles0678

standing of those warnings and voluntarily and knowingly waiving his rights. Accordingly, defendant's statements were not obtained in violation of the rule of Miranda v. Arizona.

10. Defendant's written statement (Exhibit C-6) and oral statement (Exhibit C-7), given to the Philadelphia Police on September 20, 1982, are admissible in evidence by the Commonwealth at defendant's trial.

BruceMurrayDAOFiles0679

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH | : | NOVEMBER TERM, 1982 |
| v. | : | |
| TYRONE WESSON | : | NO. 1103 |

## O R D E R

AND NOW, this thirty-first day of May 1983, it is

ORDERED

that defendant's Motion to Suppress Oral and Written Statements given by him to the Philadelphia Police on September 20, 1982, is DENIED.

BY THE COURT

_____ J.

BruceMurrayDAOFiles0680